J. M. W. JONES *et al.*

*v.*

TOWN OF LAKE VIEW.

*Filed at Ottawa, March 31, 1894.—Rehearing denied, October Term, 1894.*

1. STATUTE—*Constitutionality—subjects embraced.* The act of 1889, relating to public parks, is not unconstitutional as being in contravention of sec. 13, art. 4, of the Constitution, which provides that "no act hereafter passed shall embrace more than one subject, and that shall be expressed in its title." Nor is sec. 20 of the act of 1874, for the reason it introduces a new and independent subject, not embraced in the original act to which it was an amendment. The subject-matter of sec. 20 falls within the general purposes expressed in the title of the act of 1871, which it amended.

2. The amendments of 1874 and 1881 to the original act of June 16, 1871, relate to the same subject-matter, and are germane to the purposes and objects of the original act; and the title of the act of 1889 shows an intention to amend the act of 1871, as amended in 1874 by the addition of sec. 20. Not only is reference made to the former act by its title, but it is to be amended as amended by the subsequent statutes named.

3. Not only is the subject of the amendment embraced within the general words of the title of the act of 1889, but by reference to the section sought to be amended, the specific purpose was pointed out. The title of the act is sufficiently comprehensive within itself to reasonably indicate the objects which it assumes to effect, and this is all that is required by the constitutional provision.

4. JUDICIAL NOTICE—*of organization of towns.* Where the officers acting are those elected by the people in towns organized under the general township organization law, the courts will be required to take judicial notice of the powers of such officers when thus acting, and that the town is within a county under township organization. In like manner the court is required to take judicial notice of the change of organization of any town or city from its original organization to organization under the general incorporation act for cities, etc.

5. TOWNS—*corporate authorities.* The supervisor and assessor are the corporate authorities of a town, and special assessments for local improvements made by them are made by the corporate authorities of the town, within the meaning of the constitutional provision: Art. 9, sec. 9.

6. MUNICIPAL CORPORATIONS—*legislative power over.* The power of the legislature to extend, abridge or abrogate, by general law, the powers and functions of the instrumentalities of government which it has created, can not be questioned; and the right to impose additional duties and confer additional powers upon the municipalities of the State clearly exists.

7. PARKS—*driveway—of the application for.* The act of 1889, relating to parks, requires that the application made to the corporate authorities of the town for leave to open, establish and construct a driveway, shall describe the proposed location in detail. The park commissioners determine the value, character, locality and description of the improvement, and submit the same to the corporate authorities of the town, for their approval.

8. The warrant for further proceedings in making such public improvement by special assessment, is the order or authority in writing given by the corporate authorities of the town for the opening, establishing and construction of the driveway, as determined upon by the park commissioners.

9. SPECIAL ASSESSMENT—*committee to estimate cost.* Article 9, of the act for the incorporation of cities and villages, contemplates, in all cases of special assessment, that a committee shall be designated in the ordinance to make an estimate of the cost of the proposed improvement, and return the same, together with the cost of the levy and collection of the assessment, preliminary to the presentation of a petition, to some court of competent jurisdiction for the appointment of commissioners to apportion the assessment upon property benefited.

10. SAME—*benefits to be assessed.* The total amount of benefits to be assessed is fixed by the commissioners appointed to make an estimate of the cost, etc., of the improvement, and is thereby conclusively determined.

11. SAME—*questions triable by jury.* On application for the confirmation of a special assessment, the only questions the objectors are entitled to have tried by a jury, is whether their property was assessed more or less than it is benefited, or more or less than its proportionate share of the total cost of the improvement, as determined by the estimate returned.

12. SAME—*judgment several as to each tract.* A judgment of confirmation of a special assessment is several as to each tract or parcel of land assessed. A party, as to whose lots the assessment roll is complete, will not be affected by the courts setting aside the assessment as to lots in which he has no interest.

13. The exercise of the power by the commissioners to determine what property shall or shall not be included in the assessment is not subject to review by trial by jury. The court may supervise, upon proper objection, the exercise of the power by the commissioners. The court has the power, at any time before final judgment, to modify, alter, change and annul or re-cast any assessment, and to take all such proceedings and make all such orders as may be necessary to make a true and just assessment according to the principles of the act.

14. And in cases of fraud, corruption, oppression or departure from the principles governing in like cases, it will be the duty of the court to set it aside or to cause the same to be so changed as to make a just and true assessment. This, however, is for the court, and a matter with which a jury has nothing to do.

15. For like reasons evidence offered tending to prove that the estimated cost was excessive, or that improper items entered into the consideration of the commissioners making it, is properly excluded from the jury.

16. SAME—*matters not proper for the jury.* On the trial of issues of fact in a proceeding to confirm a special assessment of property benefited, the court instructed that the jury "have nothing to do with the extent of the territory included in the district assessed in this proceeding. You are to take it for granted that the district is right, and that all the property benefited has been assessed. On this subject the determination of the commissioners is conclusive in the present hearing": *Held* that the instruction was correct.

17. SAME—*riparian rights—on question of damages.* On a proceeding to confirm a special assessment to pay the cost of a driveway connected with a public park, the court instructed the jury, "that in determining the issues in the case as to property abutting on Lake Michigan, they are not to take into account the value of any riparian rights. The owner of such rights, if any, must be compensated for any damages he may suffer by interference therewith, in another proceeding." The title over or across the tracts referred to in the instruction had not been acquired: *Held*, no error in giving the instruction.

APPEAL from the County Court of Cook County; the Hon. FRANK SCALES, Judge, presiding.

On the 28th of April, 1890, the commissioners of Lincoln Park passed and entered an order of record that a drive-way be established, opened and constructed along the shore of Lake Michigan, in the town of Lake View, Cook county, Illinois, from Lincoln Park, at the south line of Belmont avenue, in said town, to a connection with Byron street, as opened, and particularly describing the location, width, etc., of such driveway, and providing in detail for material to be used and mode of constructing the same. And it was further ordered, that the cost of said improvement, etc., be raised by special assessment, to be levied upon the property to be benefited thereby, in accordance with the provisions of article 9, of the general Cities and Villages act. And, further, that application be made to the supervisor and assessor of the town of Lake View (there being, as recited in said order, no board of trustees in said town), for leave to establish, open and construct said drive-way, and for authority to commence and prosecute proceedings, in behalf of said town, for making said improvement in accordance with law.

On the 7th of May, 1890, said commissioners made application in writing, to which was attached said order, etc., to the supervisor and assessor of the town of Lake View, setting forth the adoption and entry of record of said order, and applying for leave to make the proposed improvement, and asking that said supervisor and assessor approve of said improvement, and give authority in writing for the making thereof, in accordance with the law.

On the same day said supervisor and assessor, at a meeting of the supervisor and assessor of the town of Lake View, as corporate authorities in that behalf, made and entered an order of record approving of said improvement, and giving authority to the commissioners of Lincoln Park to make the same in accordance with the 9th article of the Cities and Villages act, the cost, etc., to be defrayed by special assessment upon property to be benefited thereby,

according to law. This order of approval and consent of the supervisor and assessor sets forth the application of the commissioners and their order before mentioned in full.

At a meeting of the supervisor and assessor of the town of Lake View, corporate authorities in that behalf, held on the 18th of March, 1891, an order was made and entered of record, which, after reciting the previous application to and order of the supervisor and assessor approving and authorizing the opening, establishing and constructing of said drive-way; and that since the making of said order, condemnation proceedings have been carried on, for the purpose of determining the amount to be awarded for the property to be taken or damaged for said improvement, and that said commissioners of Lincoln Park "have now applied to said supervisor and assessor, corporate authorities aforesaid, to cause an estimate to be made of the cost of the opening and establishing of said improvement" in accordance with the description thereof, contained in the order and application of said commissioners, for leave to make the same, including the amount to be paid as just compensation for private property to be taken or damaged therefor, it was ordered that F. O. Parker, H. W. Taylor and Henry Mehrle, be and are hereby appointed commissioners to make an estimate of the cost of making and constructing said improvement as described, etc., including labor and material, and all other expenses attending the same, together with the amount to be paid as compensation for private property to be taken or damaged for said improvement, and the cost of making and levying the assessment.

On the 17th of March, 1891, the commissioners of Lincoln Park made and entered of record an order, which, after reciting the precedent steps taken, made a like appointment of the same persons for the same purpose.

Afterward, March 23, 1891, commissioners reported estimating the total cost of the improvement at $332,503.15. And on the 25th day of March, 1891, at a meeting of the

supervisor and assessor aforesaid, "corporate authorities of the town of Lake View in that behalf," an order was made and entered of record, approving said report, and authorizing the commissioners of Lincoln Park, to cause a petition to be filed in the County Court of Cook county, for the appointment of commissioners to make assessment of the same upon the property benefited, etc., which was done. Commissioners were duly appointed by the court, who returned an assessment roll, finding that the proportion of the total cost of the improvement, which would be of benefit to the property, the whole thereof, $332,503.15, and the proportion of the total estimated cost of the improvement, which would be of benefit to the public, and assessed to the town of Lake View nothing, and apportioning said estimated cost upon the various lots, blocks and tracts of land benefited, etc.

Upon the return of the assessment roll, objections were filed by various of the owners of land assessed, and it appearing that certain lots had been assessed together, when they should have been assessed separately, the court recommitted the assessment, as to such lots, to said commissioners, to re-cast the assessment in respect of said lots. All objections as to assessment upon other lots, blocks and tracts of land, "not triable by jury," were severally overruled. And thereupon a jury was impaneled to try the issue of fact made by the objections, that the several lots of objectors were assessed more than the same were benefited, or more than their proportionate share of the cost of said improvement. The jury returned a verdict, finding that the lots of objectors were not assessed more than they were benefited by said improvement, or more than their proportionate share of the cost thereof. And the said commissioners having re-cast said assessment roll as to the lots, in respect of which it was re-committed to them (none of which was included within the lots objected for), and the court, having approved of said verdict, rendered its judg-

ment confirming the assessment as returned by said commissioners. And certain of the objectors appeal.

Mr. F. W. BECKER, for the appellants:

1. The act of 1889, entitled, "An act to amend section 20 of an act entitled, An act in regard to the completion of public parks, etc.," contravenes section 9, article 9, of the Constitution. *People* v. *Mayor*, 51 Ill. 18; *People* v. *Salomon*, id. 37; *People* v. *Morgan*, 90 id. 566; *Dunham* v. *People*, 96 id. 331; *West Chi. Park Coms.* v. *McMullen*, 134 id. 170; *Harward* v. *St. Clair Drain Co.*, 51 id. 130; *Hessler* v. *Drainage Coms.*, 53 id. 105; *Lovingston* v. *Wider*, id. 302; *Hinze* v. *People*, 92 id. 406; *Middleport* v. *Ætna L. Ins. Co.*, 82 id. 562; also section 10, article 9, of the Constitution. The question is not foreclosed by *Hundley* v. *Coms. of Lincoln Park*, 67 Ill. 559; *People* v. *Gage*, 83 id. 486; *Trustees* v. *Potter*, 108 id. 433.

2. The act of 1889 does not declare the supervisor and assessor corporate authority, but "the board of trustees and supervisor or assessor," which language should be enforced as found. *Ottawa Gas Light Co.* v. *Downey*, 127 Ill. 201.

Presumption that Lake View has a board of trustees. *North Chicago City Ry. Co.* v. *Lake View*, 105 Ill. 207; *Brush* v. *Lemma*, 77 id. 496; *Doyle* v. *Village of Bradford*, 90 id. 416.

3. The act of 1889 contravenes section 13, article 4, of the Constitution. *Kedzie* v. *Park Com.*, 114 Ill. 280; *Park Com.* v. *Telegraph Co.*, 103 id. 33; *Dolese* v. *Pierce*, 124 id. 140.

4. The act of 1889 amends section 20, which was not in existence. *L. & N. R. R. Co.* v. *City of E. St. L.*, 134 Ill. 656; *Goodall* v. *The People*, 123 id. 389.

5. No compliance with the act of 1889 is shown. *Thorn* v. *West Chicago Park Com.*, 130 Ill. 594.

6.   Nor with article 9 of the act on special assessments. No ordinance by the corporate authorities; ordinance of park commissioners not legally passed.   *Rich* v. *City of Chicago*, 59 Ill. 286; *Lindsay* v. *Chicago*, 115 id. 120; the estimate of cost defective.   *Gibson* v. *Chicago*, 22 Ill. 566; *Brown* v. *Joliet*, id. 123; *Gurnee* v. *Chicago*, 40 id. 165; *Canal Trustees* v. *Chicago*, 12 id. 403.

Two independent matters: the condemnation award and the cost of improvement are embraced in one proceeding, and section 53, article 9, of the act on cities and villages is ignored.   *Goodwille* v. *City of Lake View*, 137 Ill. 51.

7.   Errors on the trial; no roll.   *Morrison* v. *City*, 142 Ill. 660; evidence of property unassessed in the district excluded.   *Kuehner* v. *City of Freeport*, 143 Ill. 92; *Chicago* v. *Baer*, 41 Ill. 306; *Scammon* v. *Chicago*, 42 id. 192; *Parmelee* v. *Chicago*, 60 id. 267; *Bigelow* v. *Chicago*, 90 id. 49; also evidence of improper items in the estimate of cost; and erroneous instructions were given.   *Stone and Lime Co.* v. *City of Kankakee*, 128 Ill. 173.

Messrs. Wilson, Moore & McIlvaine, for the appellee:

As to the validity of the act authorizing the supervisor and assessor to represent the town.   *People* v. *Salomon*, 51 Ill. 37; *People* v. *Gage*, 83 id. 486; *Hundley* v. *Com'rs*, 67 id. 559.

The application is required by the statute to be made to the supervisor and assessor only.   *Brush* v. *Lemma*, 77 Ill. 496.

The court will take judicial notice that a county is under township organization.   *Rock Island* v. *Cuinely*, 126 Ill. 415; *Rock Island* v. *Steele*, 31 id. 543; *People* v. *Suppiger*, 103 id. 434.

The act of February 18, 1874, does not include two subjects, and there is nothing in the act not expressed in the title.   *People* v. *Hazelwood*, 116 Ill. 319; *Hawthorn* v. *People*, 109 id. 302.

The act of 1889 is not void as purporting to amend a section which does not exist.   *Steele* v. *River Forest*, 141 Ill. 302.

An objector is not entitled on the trial to compare his assessment with that of any other, but only with the total. *Fagan* v. *The City of Chicago*, 84 Ill. 227; *Bigelow* v. *The City of Chicago*, 90 id. 49.

An error in the assessment as to one lot does not affect others.   *Gurnee* v. *City of Chicago*, 40 Ill. 165.

It was sought to show that the North Chicago street railroad on Evanston avenue was benefited, and also a certain fifty foot strip, and it is contended that the exclusion of this evidence was error.   There are several answers to this proposition.

The question of what property should be assessed is exclusively for the commissioners, and, in the absence of fraud, or of an omission by mistake of law, is conclusive.

It is contended by counsel that this court, by its prior decision, has held the contrary rule, and that an objector may always prove that property has been omitted which ought to have been assessed, and they cite on this subject the cases of *Chicago* v. *Baer*, 41 Ill. 306; *Scammon* v. *Chicago*, 42 id. 192; *Parmelee* v. *Chicago*, 60 id. 267.

All objections to the proceedings themselves, which are not made before the jury is impaneled, are waived.   *Ward* v. *Railroad Company*, 119 Ill. 290; Lewis on Eminent Domain, secs. 399–407.

The question whether property was omitted to be assessed was raised on the jury trial, but it could make no possible difference in the question before the jury whether there was property wrongfully omitted or not.   The jury issues were two only: was objector's property assessed more than it would be benefited, and was it assessed more than its just proportion of the total.   *Fagan* v. *Chicago*, 84 Ill. 227; *DeKoven* v. *Lake View*, 131 id. 541.

This was a question for the court only, and all such objections had been heard and disposed of on a prior hearing. All questions of this nature must be disposed of before the jury is impaneled, and in the present case counsel had raised all such questions as they desired to raise, and that opportunity had passed. Appellants offered no evidence of this nature to the court, and took no exception which raises the point. *Ward* v. *M. & N. W. R. R. Co.*, 119 Ill. 290; Lewis on Eminent Domain, secs. 399, 407.

Mr. Justice Shope delivered the opinion of the Court:

It is insisted that the act of the legislature, in force July 1, 1889, under which this proceeding was had, is unconstitutional, for the reason that it contravenes section 13, article 4, of the Constitution, providing: "No act hereafter passed shall embrace more than one subject, and that shall be expressed in the title." And, second, that it is void, because the act of 1874, creating section 20, of which the later act is amendatory, was void under the foregoing provision of the Constitution, for the reason that an entirely new and independent subject, not embraced in the original act, was introduced by section 20; that said section, providing for the establishing, opening, and constructing a drive-way from the park by special assessment, introduced a new substantive matter, not pertinent to that contained in the original act or embraced within its title, and that the amendment of 1889, of the void section, was, therefore, itself void.

The title of the act of 1874 is: "An act to amend sections 6, 7 and 9, of an act entitled, 'An act in regard to the completion of public parks and the management thereof,' approved June 16, 1871, and to add two (2) sections thereto." The two sections added were 19 and 20. By reference to the original act of 1871, it will be found (sec. 3) that the supervisor and assessor, "corporate authorities of any town in which any such park may be situated," are

authorized to institute proceedings to condemn lands for park purposes. The following sections provide the course of proceeding: Section 6 provides for a special assessment, by the supervisor and assessor, "upon the lands and lots within the corporate limits of the town benefited," to pay the probable damages for taking the land, and costs, etc. The act of 1874, after amending sections 6, 7 and 9, adds sections 19 and 20. Section 19 is restrictive of the power of the supervisor and assessor. Section 20 authorized the commissioners of parks, desiring to open, establish and construct any drive-way from the park under their control, to make application to the board of trustees of the town in which it was proposed to make the same, if there was such board, or, if not, then to the supervisor and assessor of the town, for leave to open, establish and construct such drive-way. And providing, that upon approval of the application, etc., by the supervisor and assessor, they should give authority in writing, for opening, establishing and constructing the same, in accordance with Art. 9 of the general law for the incorporation of cities and villages. The supervisor and assessor are "declared corporate authorities for the purposes of this section;" and it is expressly provided, that: "When any such drive-way shall be established, it shall form a part of such park, and be managed and governed as part thereof." The title of the act of 1871 is, "An act in regard to the completion of public parks, and the management thereof." The amendment of an act *ex vi termini* implies a change of its provisions upon the same subject-matter to which the original relates. It can not be seriously questioned, that the subject-matter of section 20 falls within the general purposes expressed in the title of the act of 1871. The original act, as we have seen, relates to the acquiring of land for park purposes, and the method of its acquisition; section 20 relates to identically the same thing, the acquisition of land for park purposes, through

the same instrumentalities, adding only the right to improve the same as parts of the park. Under the park acts, as under this act, the boulevards and drive-ways leading to and from the public parks of the State are parts of the park system, and necessary to carry into effect the purposes for which the parks were designed. The act declares that the drive-way, when established, shall form a part of the park, and be governed and managed as part thereof, and it can not be said that any new substantive matter, not germane to that contained in the original act, is introduced by the amendment. The act of 1874 was not independent legislation upon a matter not embraced within the prior statute.

The title of the act of 1889 is: "An act to amend section 20, of an act entitled, 'An act in regard to the completion of public parks, and the management thereof,' approved June 16, 1871, and amendments thereto, approved February 18, 1874, and May 28, 1881." The most casual examination shows that the amendments of 1874 and 1881, to the original act of June 16, 1871, as we have seen, relate to the same subject-matter, and are germane to the purposes and objects of the original act. The title of the act of 1889 shows an intention to amend the act of 1871, as amended in 1874, by the addition of section 20. Not only is reference made to the former act by its title, but it is to be amended as amended by the subsequent statutes named. Not only is the subject of the amendment embraced within the general words of the title, but by reference to the section sought to be amended the specific purpose was pointed out. The title of the act is sufficiently comprehensive, within itself, to reasonably indicate the objects which it assumes to affect, and this is all that is required by the constitutional provision invoked. *People ex rel.* v. *Hazelwood*, 116 Ill. 327, and cases cited. What is here said disposes of the contention of counsel that the act of 1889 was void, because purporting to amend section 20, of the act of 1871, when there was no such section. The act

of 1871, as amended by the act of 1874, and by the act of 1881, contained section 20, and this is the section to be amended, specifically pointed out by the title of the act of 1889.

By the statute, the application of the park commissioners for leave to open, establish and construct the drive-way from the park, is required to be made to the board of trustees of the town, if there be a board of trustees, and if there is no such board, then to the supervisor and assessor of the town, who are required to act. There is no evidence in this record that there was not such a board of trustees, and as the town was incorporated under the act of 1865, entitled, "An act to incorporate a board of trustees for the town of Lake View, in Cook county," it is insisted that it must be presumed that such incorporation continues. Here, the officers acting are those elected by the people in towns organized under the general township organization law. And the court is, therefore, required to take judicial notice of the powers of such officers, when thus acting, and that the town is within a county under township organization. *County of Rock Island* v. *Steele*, 31 Ill. 543; *People* v. *Suppiger*, 103 id. 434; *Doyle* v. *Village of Bradford*, 90 id. 416. In like manner the court is required to take judicial notice of the change of organization of any town or city from its original organization to organization under the general incorporation act for the incorporation of cities and villages, and the court will, in all such matters, advise itself as it shall deem requisite, and determine accordingly. *Rock Island* v. *Cuinely*, 126 Ill. 415; *Doyle* v. *Village of Bradford, supra.* We are, therefore, required to take judicial notice that the town of Lake View, as incorporated under the act of 1865, ceased to exist, and has become a city under the Cities and Villages act, and that, therefore, the application was properly made to the supervisor and assessor of said town.

It appears from the evidence that Lake View avenue extends northward from Lincoln Park, and connecting therewith to Belmont avenue, and it was stipulated in the record, "That the Lincoln Park commissioners were  *  *  * in possession and control of the drive-way, known as Lake View avenue, extending from Lincoln Park to Belmont avenue, in said town of Lake View, *as a part of the park;* that said drive-way had been improved by the town of Lake View, and by the authorities of said town turned over to said commissioners of Lincoln Park, with the due consent and concurrence of the abutting property owners." The statute provides the mode by which the streets of a city, or village, may pass into the possession and control of the park commissioners as a part of the park. And this stipulation was, doubtless, intended, and should be held to have the effect of dispensing with the necessity of proving the steps by which such possession and control was acquired. That they have possession and control, when considered for the purposes for which the stipulation was made, necessarily means the legal possession and control. The proposed drive-way connects with Lake View avenue, and is practically an extension of that avenue north along the lake shore. The contention that it is not a drive-way from the park is untenable.

It is also insisted that the proceedings are unwarranted, for the reasons: first, that the supervisor and assessor of the town are not corporate authorities, within the meaning of the Constitution, authorizing the legislature to vest the corporate authorities of cities, towns and villages with power to make local improvements by special assessment; second, that if the act attempts to delegate such power without submitting the question to a vote of the people, the act is void. In respect of the first, the question was before this court in *Hundley* v. *Lincoln Park Com'rs*, 67 Ill. 559, and again in *The People ex rel.* v. *Gage et al.*, 83 id. 486. In the latter case it was said: "This court, in

*Hundley* v. *The Commissioners of Lincoln Park*, 67 Ill. 559, substantially held, that the supervisor and assessor of a town were corporate authorities of the town.'' And it was there held, that the special assessments for local improvements, being made by these officers, were made by the corporate authorities of the town in which the land was situated, within the meaning of the constitutional provision, article 9, section 9. *People* v. *Salomon*, 51 Ill. 37 ; *People ex rel.* v. *The Mayor, etc.*, 51 id. 18.

In respect of the second contention, no new municipality is proposed to be created. By general law, applicable throughout the State to all towns similarly situated, the power to make local improvements by special assessment is conferred upon the corporate authorities of the municipality. And its public officers, elected by the people, are, by law, constituted such corporate authorities. There is a broad distinction between this case and the case of the *People* v. *The Mayor, etc., supra.* There an attempt was made to force an indebtedness upon the city without the consent of the people, or of the municipal authorities, and the principle there announced can have no application here. The power of the legislature to extend, abridge or abrogate, by general law, the powers and functions of the instrumentalities of government which it has created, can not be questioned. And the right to impose additional duties and confer additional powers upon the municipalities of the State, clearly exists. *West Park Com'rs* v. *McMullen*, 134 id. 172.

It is next objected, that the proceedings were not commenced and prosecuted in accordance with article 9, of the Cities and Villages act, as the act of 1889 provides. It is said, that no ordinance was passed by the corporate authorities of Lake View, specifying the nature, character, locality and description of the improvement, in accordance with section 19, of said article. The act of 1889 requires, that the application made to the corporate authorities of the

town for leave to open, establish and construct such drive-way, shall describe the proposed location in detail. The park commissioners determine the nature, character, locality and description of the improvement, and submit the same to the corporate authorities of the town for their approval. That was done in this case, in substantial compliance with the provisions of said article 9, the specifications of the locality, description of the improvement, the materials to be used, and manner of construction, determined upon by the park commissioners, duly entered of record, and certified by the proper officer, being made part of the application to the town authorities. The warrant for further proceeding, in making such assessment, is the order, or authority in writing, given by the corporate authorities of the town, for the opening, establishing and construction of the drive-way, as determined upon by the park commissioners. The act provides (3 S. & C. 917), that if the corporate authorities of the town "shall approve of the proposed improvement, authority in writing shall be given for the establishing, opening and construction of the same, in accordance with the 9th article of an act, entitled, 'An act to provide for the incorporation of Cities and Villages,' approved April 10, 1872; and the commissioners shall, in behalf of such town, cause the proceedings to be commenced and prosecuted in accordance with the provisions of that article." Upon the presentation of the application of the park supervisor and assessor of the town, showing the nature, character, locality and description of the improvement in detail, as fixed and determined upon by the park commissioners, by order duly made and entered of record, the supervisor and assessor of the town of Lake View, under their hands and seals, as the corporate authorities of said town, duly approved the proposed improvement, and gave authority in writing to said park commissioners for the establishing, opening and construction of said drive-way. This was in strict compliance with the provisions of section

20, of the act of 1889, and authorized the farther proceed-
ing contemplated by said section.   Article 9, of the act for
the incorporation of cities and villages, contemplates, in all
cases of special assessment, that a committee shall be des-
ignated in the ordinance to make an estimate of the cost of
the proposed improvement, and return the same, together
with the cost of the levy and collection of the assessment,
preliminary to the presentation of a petition, to some court
of competent jurisdiction, for the appointment of commis-
sioners to apportion the assessment upon property bene-
fited.   The act of 1889 is silent as to this preliminary step
in perfecting the assessment, but we think that it was
clearly within the legislative contemplation that an esti-
mate of the cost of the improvement should be made, as
without it no authority is given by the provisions of article
9 for the subsequent apportionment of the cost upon the
property benefited.   And the commissioners appointed to
make such estimate are required to report what proportion
of the total estimated cost will be of benefit to the property
affected, and what proportion should be borne by the
public.   Section 20, of the act of 1889, provides, as we
have seen, that upon the approval of the application by the
corporate authorities of the town, and the giving of author-
ity in writing for the establishing, opening and construc-
tion of the drive-way, in accordance with article 9, of the
Cities and Villages act, "the commissioners" (park com-
missioners) shall, in behalf of such town, cause the proceed-
ings to be commenced and prosecuted in accordance with
the provisions of that article.   The park commissioners,
in behalf of the town, are to cause the proceedings to be
commenced in accordance with said article 9, and it follows,
necessarily, that they, in behalf of the town, are to take
such steps and perform such acts as will be a commence-
ment and prosecution of such proceedings, within the pur-
view of the general act.   In this case, as a matter of pre-
caution, a formal order was made and entered of record,

both by the supervisor and assessor of the town, and by the park commissioners, appointing the same three persons commissioners to make and report an estimate of the cost, etc., of said improvement, and upon the return thereof, this petition was filed in the County Court, in compliance with the provisions of said article 9, of the general law for the incorporation of cities and villages. We are of opinion that the proceeding was authorized by the statute, and that the same is in substantial compliance therewith.

It is also objected, that the assessment roll was incomplete, and that, therefore, the court erred in proceeding with the trial by jury, against the objection of objectors. The roll as returned was complete, but it appearing that certain lots had been assessed together as land, it was ordered, by the court, that the portions of the assessment roll, relating to parcels of land specifically mentioned and specified, be re-committed to the same commissioners to re-cast the assessment, dividing such parcels of land, and to assess the same separately. It does not appear that any land of the objectors here complaining was included in that portion of the assessment roll ordered to be re-cast. By section 33, article 9, of the Cities and Villages act, it is expressly provided that the court may cause the assessment to be re-cast, and may, for that purpose, continue the application "as to the whole or any part of the premises." The total amount of benefits to be assessed is fixed by the commissioners appointed to make an estimate of the cost, etc., of the improvement, and is thereby conclusively determined. The only question objectors could be interested in upon the trial by jury, was whether their property was assessed more or less than it was benefited, or more or less than its proportionate share of the total cost of the improvement, as determined by the estimate returned. *Goodwillie* v. *Lake View,* 137 Ill. 51. The judgment of the court was a several judgment as to each tract or parcel of land assessed (sec. 150, ch. 24, R. S.), and it is, therefore, apparent that objectors

were in no wise prejudiced by the ruling.   *Gurnee* v. *Chicago*, 40 Ill. 165; *Fagan* v. *Chicago*, 84 id. 227; *DeKoven* v. *Lake View*, 131 id. 541.

It is next objected, that the court erred in excluding evidence from the jury tending to show that other property, not included in the assessment roll, was benefited by the improvement.   A consideration of the issues submitted to the jury will demonstrate the propriety of this ruling.   It is unavoidable, under the system prescribed by the legislature, that a very large discretion is committed to the commissioners authorized to apportion the assessment upon the property benefited.   This discretionary power they exercise in determining not only what the benefits to the property affected are, but also in determining what property is benefited by the proposed local improvement.   The exercise of the power to determine what property shall, or shall not, be included in the assessment, is not made the subject of review by trial by jury.   The court may undoubtedly supervise, upon proper objection, the exercise of the power by the commissioners, and, indeed, as we have already seen (sec. 33, art. 9, ch. 24, R. S.), the court is given power, at any time before final judgment, to modify, alter, change and annul, or re-cast any assessment, and to take all such proceedings and make all such orders as may be necessary to make a true and just assessment according to the principles of the act.   And in cases of fraud, corruption, oppression, or departure from the principles governing in like cases, it would be the duty of the court to set it aside, or to cause the same to be so changed as to make a just and true assessment.   This, however, is to the court, and with which the jury have nothing to do.   *Chicago* v. *Baer*, 41 Ill. 306; *Scammon* v. *Chicago*, 42 id. 192; *Parmelee* v. *Chicago*, 60 id. 267; *Wright* v. *Chicago*, 48 id. 285; *Elliott* v. *Chicago*, id. 293; *Bigelow* v. *Chicago*, 90 id. 55.

And for like reasons, the evidence offered tending to show that the estimated cost was excessive, or that im-

proper items entered into the consideration of the commis-
sioners making it, was properly excluded from the jury.
No evidence touching either of said matters was offered,
upon consideration of the objections addressed to the court,
but it was offered after such objections had been severally
overruled, and upon trial of the issues presented to the
jury.    Nor does it appear, that at any time thereafter was
the court called upon to rule in respect thereof.    The only
ruling the court was called upon to make, or did make, was
that the evidence was incompetent for the consideration of
the jury.    In this there was no error.

It is objected, that the court erred in giving the 5th in-
struction for petitioner.    This instruction was as follows:
"The jury have nothing to do with the extent of the terri-
tory included in the district assessed in this proceeding.
You are to take it for granted that the district is right, and
that all the property benefited has been assessed.    On this
subject the determination of the commissioners is conclusive
in the present hearing."

It follows, necessarily, from what has preceded, that the
instruction contained a correct proposition of law.

It is objected, that the ninth instruction given for peti-
tioner was erroneous.    It told the jury, "that in deter-
mining the issues in this case, as to objecting property
abutting on Lake Michigan, they are not to take into ac-
count the value of any riparian rights.    The owner of such
rights, if any, must be compensated for any damages he
may suffer by interference therewith in another proceed-
ing."

The title over or across the tracts referred to in the in-
struction had not been acquired.    And it is manifest that
in any subsequent condemnation proceeding, instituted for
that purpose, the value of the land taken, and all incidents
to it affecting its value, of which the owner was deprived,
must be compensated for.    Par. 77, ch. 103, 3 Starr &
Curtis' R. S.    The judgment here would form no bar to

such recovery.    There is a broad distinction between this class of cases and cases where no portion of the property to be assessed is taken for the proposed improvement, as in *Stone and Lime Co.* v. *Kankakee*, 128 Ill. 173.    In that case it was held, that the damages occasioned by the improvement, by the destruction of the particular use of which the property was susceptible, should be taken into account in estimating the benefits to accrue to the property from the improvement.    The land-owner would be otherwise remediless.    Here, there can be no interference with the possession and right of the land-owner, without compensation for the land taken, and damages to land not taken.    And if the lot assessed is depreciated in value by the loss of riparian rights, by reason of the local improvement, damages therefor would be recoverable.    *Calumet River Ry. Co.* v. *Moore et al.*, 124 Ill. 329.    We perceive no error in the giving of this instruction.

Further objections have been made to the assessment, but after careful consideration have not been regarded of sufficient importance to merit discussion.    Finding no substantial error in the record, the judgment of the lower court will be affirmed.                     · *Judgment affirmed.*